# Exhibit C

As of April 3, 2014

Global Partners LP
800 South Street
Suite 200
Waltham, MA 02453

**Re: Basin Transload, LLC (the "*Company*")**

Ladies and Gentlemen:

Reference is made to that certain Irrevocable Limited Guaranty Agreement dated as of the date hereof (the "***Guaranty***") executed by Global Partners LP, a Delaware limited partnership ("***Global***") in favor of Tesoro High Plains Pipeline Company LLC, a Delaware limited liability company ("***THPP***"). Pursuant to the Guaranty, Global unconditionally and absolutely guarantees to THPP the prompt payment when due of all amounts payable by Basin Transload, LLC, a Delaware limited liability company ("***Basin***") to THPP (a) pursuant to that certain Construction and Indemnity Agreement (Beulah Tie-In) dated as of the date hereof (the "***Construction Agreement***") by and between Basin and THPP, (b) pursuant to that certain Connection Agreement dated as of the date hereof (the "***Connection Agreement***") by and between Basin and THPP, (c) pursuant to that certain Easement Agreement dated as of the date hereof (the "***Easement Agreement***" and, together with the Construction Agreement and the Connection Agreement, each a "***THPP Agreement***" and collectively, the "***THPP Agreements***") or (d) any other Obligations (as defined in the Guaranty) due to THPP (collectively, the "***Guaranteed Obligations***"). Capitalized terms not otherwise defined herein shall have the meaning set forth in the THPP Agreements.

Global, through its wholly-owned subsidiary, Global Operating LLC, currently owns 60% of the issued and outstanding membership interests in Basin. TGC, L.P., a Montana limited partnership ("***TGC***"), currently owns 20% of the issued and outstanding membership interests in Basin. MBI Holdings, LLC, a North Dakota limited liability company ("***MBI***" and, together with TGC, the "***20% Owners***"), currently owns 20% of the issued and outstanding membership interests in Basin.

Global, TGC and MBI have agreed that, in the event Global is required to pay any amounts to THPP in respect of the Guaranteed Obligations during the Term or following the Recovery Period (any such amount(s), a "***Guaranty Payment***"), each of TGC and MBI shall, within 5 business days of receiving notice from Global of such required Guaranty Payment to THPP, reimburse Global 20% of the Guaranty Payment. By way of example, if THPP makes demand against Global for a Guaranty Payment in the amount of $5,000,000, then, within 5 business days of receiving notice from Global of such required Guaranty Payment, TGC and MBI shall each pay $1,000,000 to Global (representing each of their respective 20% shares of such Guaranty Payment).

In the event either TGC or MBI fails to timely pay its respective 20% share of any Guaranty Payment made by Global (such non-paying party, a "***Non-Paying Party***"), Global may, at its election, exercise one or more of the following remedies:

(a) Global may elect, by written notice to both TGC and MBI, to treat any Non-Paying Party's respective 20% share of any Guaranty Payment made by Global as a Required Contribution pursuant to Section 5.1(a) of the Limited Liability Company Agreement of Basin (the "***LLC Agreement***"). The Non-Paying Party shall be deemed a Delinquent Member (as defined in Section 5.3 of the LLC Agreement) and Global's wholly owned subsidiary, Global Operating LLC shall be deemed to have advanced the entire amount of such Delinquent Member's Required Contribution. Any 20% Owner who is not a Non-Paying Party shall, in addition to paying its respective 20% share of any Guaranty Payment made by Global, be given the opportunity to reimburse Global its proportionate share of such Delinquent Member's Required Contribution in accordance with the LLC Agreement. The Delinquent Member's Percentage Interests (as defined in the LLC Agreement) shall be adjusted in accordance with Section 5.3 of the LLC Agreement.

(b) Global may elect, by written notice to Basin and to the Non-Paying Party, to require Basin to pay any distributions which would otherwise be payable to the Non-Paying Party to be paid to Global in an amount equal to such Non-Paying Party's respective 20% share of any Guaranty Payment made by Global together with interest thereon equal to 12% per annum. Such amounts may be made from the Distribution Escrow as set forth below.

(c) Global may elect, by written notice to the Non-Paying Party, to acquire the entire Membership Interest (as defined in the LLC Agreement) owned by such Non-Paying Member at a price equal to the Fair Market Value (as defined in the LLC Agreement) of such Membership Interest, and such Non-Paying Party shall be obligated to sell its Membership Interest to Global as provided in Section 6.5 of the LLC Agreement. In calculating the Fair Market Value pursuant to Section 6.5(a) of the LLC Agreement, the Fair Market Value shall be reduced by an amount equal to the Non-Paying Party's 20% share of any Guaranty Payment made by Global.

(d) Global may elect, by written notice to Basin, to setoff any payments due from Global (or any of its wholly-owned subsidiaries) to Basin under any transloading or similar agreement in an amount equal to 250% of the Non-Paying Party's 20% share of any Guaranty Payment made by Global.

(e) Global may at any time take such other action (including instigating court actions) as Global may deem appropriate to obtain payment by the Non-Paying Party's 20% share of any Guaranty Payment made by Global.

Global, TGC and MBI agree that, commencing as of the Phase 1 Commencement Date, Basin shall withhold 50% of the distributions otherwise declared and payable to each of the 20% Owners and hold such distributions in escrow for the benefit of Global (such escrowed amounts, the "***Distribution Escrow***"). In no event shall the respective Distribution Escrow for each of

TGC and MBI exceed $1,300,000, provided that (a) once the total THPP Revenues received by THPP equal 1/3 of the maximum Indemnified Amount, the maximum Distribution Escrow for each of TGC and MBI will be reduced to $650,000 and any excess amounts in the Distribution Escrow shall be distributed to TGC and MBI, as appropriate and (b) once the total THPP Revenues received by THPP equal 2/3 of the maximum Indemnified Amount, there shall be no further Distribution Escrow and any amounts therein shall be distributed to TGC and MBI, as appropriate. Notwithstanding anything herein to the contrary, in the event that there are any sums available in the Distribution Escrow for a Non-Paying Party, Global shall withdraw sums from the Distribution Escrow for a Non-Paying Party pursuant to (b), above, before availing itself of any of the other remedies set forth above.

Global, TGC and MBI have further agreed that, in the event Global fails to make any required Guaranty Payment to THPP under the terms of the Guaranty, and one or both of TGC and MBI collectively pay 100% of such Guaranty Payment (such a payment, a "***Replacement Payment***"), Global shall, within 5 business days of receiving notice from TGC and/or MBI, as applicable, of such Replacement Payment, reimburse TGC and/or MBI, as applicable, 60% of the Replacement Payment made by either TGC or MBI. By way of example, if THPP makes demand against Global for a Guaranty Payment in the amount of $5,000,000 (which Global fails to pay), and each of TGC and MBI pay $2,500,000 to THPP, then, within 5 business days of receiving notice from TGC and MBI of such Replacement Payment, Global shall pay $1,500,000 to each of TGC and MBI (representing Global's 60% share of such Replacement Payment).

In the event Global fails to timely pay its 60% share of any Replacement Payment made by either TGC or MBI (such paying party, a "***Paying Party***" and, if more than one, the "***Paying Parties***"), the Paying Party(ies) may, at their election, exercise one or more of the following remedies:

(f) The Paying Party(ies) may elect, by written notice to Global, to treat Global's 60% share of any Replacement Payment made by the Paying Party(ies) as a Required Contribution pursuant to Section 5.1(a) of the Limited Liability Company Agreement of Basin (the "***LLC Agreement***"). Global shall be deemed a Delinquent Member (as defined in Section 5.3 of the LLC Agreement) and the Paying Party(ies) shall be deemed to have advanced the entire amount of such Delinquent Member's Required Contribution. Global's Percentage Interests (as defined in the LLC Agreement) shall be adjusted in accordance with Section 5.3 of the LLC Agreement.

(g) The Paying Party(ies) may elect, by written notice to Basin and to Global, to require Basin to pay any distributions which would otherwise be payable to Global to be paid to the Paying Party(ies) in an amount equal to Global's 60% share of any Replacement Payment made by the Paying Party(ies) together with interest thereon equal to 12% per annum.

(h) The Paying Party(ies) may at any time take such other action (including instigating court actions) as the Paying Party(ies) may deem appropriate to obtain payment of Global's 60% share of any Replacement Payment made by the Paying Party(ies).

Pursuant to Section 8(b)(iii) of the Construction Agreement, Basin has the right to replace the Guaranty with a Letter of Credit. In the event that the Guaranty is not replaced by a Letter of Credit by the first anniversary of the Phase 1 Commencement Date, Global, TGC and MBI shall mutually agree on additional security to be provided by each of TGC and MBI to Global to secure their respective 20% share of any Guaranteed Obligations.

TGC's and MBI's respective obligations to pay 20% of any Guaranty Payment and Global's obligation to pay 60% of any Replacement Payment are predicated on each of their current Percentage Interests (as defined in the LLC Agreement) in Basin. In the event that, during the term of this letter agreement, (a) TGC's or MBI's Percentage Interests change, their respective obligations hereunder with respect to any Guaranty Payment shall be adjusted accordingly, and (b) Global's Percentage Interest changes, Global's obligations hereunder with respect to any Replacement Payment shall be adjusted accordingly.

The parties acknowledge and agree that the obligations under this letter agreement shall apply only to Phase 1 under the THPP Agreements. The parties agree that all parties must mutually agree to Basin electing to proceed with Phase 2 under the THPP Agreements. In such event, Global, TGC and MBI must mutually agree on each party's respective obligations with respect to any Guaranty Payment relating to Phase 2. In the event that the parties do not mutually agree to proceed with Phase 2 under the THPP Agreements, the respective balances of the TGC and MBI Distribution Escrow amounts shall be distributed to TGC and MBI as soon as the Phase 1 Guaranty Obligations are satisfied.

This letter agreement shall terminate (a) as of the effective date of the termination of the Guaranty, other than with respect to any Guaranty Payment due or payable under the Guaranty or any Replacement Payment made as of the effective date of such termination, and (b) with respect to any 20% Owner, as of the date such 20% Owner ceases to own any of the issued or outstanding membership interests of Basin, other than with respect to such 20% Owner's obligations hereunder arising prior to such date.

If the foregoing correctly states your understanding with respect to the matters stated in this Agreement, please acknowledge by signing in the space provided below.

[*Signature Pages Follow*]

Accepted and agreed to as of the date first written above by:

**GLOBAL PARTNERS LP**

By: ______________________
Name: Mark Romaine
Title: Chief Operating Officer

**TGC, L.P.**

By: Diamond B Companies, Inc., as general partner

By: ______________________
Name: James R. Bennett
Title: President

**MBI HOLDINGS, LLC**

By: ______________________
Name: James Arthaud
Title: President

**BASIN TRANSLOAD, LLC**

By: ______________________
Name: William G. Davidson
Title: President

Accepted and agreed to as of the date first written above by:

**GLOBAL PARTNERS LP**

By: ______________________________
Name: Mark Romaine
Title: Chief Operating Officer

**TGC, L.P.**

By: Diamond B Companies, Inc., as general partner

By: ______________________________
Name: James R. Bennett
Title: President

**MBI HOLDINGS, LLC**

By: ______________________________
Name: James Arthaud
Title: President

**BASIN TRANSLOAD, LLC**

By: William G. Davidson
Name: William G. Davidson
Title: President

mb31020.012