# EXHIBIT F

GLOBAL®

GLOBAL PARTNERS LP 800 South Street P.O. Box 9161 Waltham, MA 02454-9161 ph: 781-894-8800 fx: 781-398-9000

October 1, 2019

**VIA FEDERAL EXPRESS AND EMAIL**

TGC, L.P.
3529 Gabel Road
P.O. Box 80284
Billings, MT 59108
Attn: James R. Bennett
Email: JimB@diamondbco.com

MBI Holdings, LLC
103 5th Street East
Dickinson, ND 58601
Attn: James R. Arthaud
Email: jima@midstate.net

Re: Basin Transload, LLC - Notice of Guaranty Payment

Dear Jim and Jim:

I am writing regarding the obligations owed by TGC, L.P. ("TGC") and MBI Holdings, LLC ("MBI") to Global Partners LP ("Global") under the letter agreement dated April 3, 2014 executed by Global, TGC, MBI and Basin Transload, LLC (the "Letter Agreement"), a copy of which is attached hereto as Exhibit A and incorporated herein by reference. Global hereby provides notice that on October 26, 2017, it paid $13,142,039 to Tesoro High Plains Pipeline Company LLC ("THPP") as a "Guaranteed Obligation", as such term is defined by and required under the Irrevocable Limited Guaranty Agreement executed by Global in favor of THPP on April 3, 2014, a copy of which is attached hereto as Exhibit B.

Under the Letter Agreement, "in the event Global is required to pay any amounts to THPP in respect to the Guaranteed Obligations . . . each of TGC and MBI shall, within 5 days of receiving notice from Global of such required Guaranty Payment to THPP, reimburse Global 20% of the Guaranty Payment." Accordingly, TGC and MBI are each now obligated to reimburse Global $2,628,408.

As required under the Letter Agreement, payment is due no later than five days after receipt of this notice.

Global expressly reserves all rights in law and in equity concerning this payment.

Very truly yours,

Edward J. Faneuil
Executive Vice President and General Counsel

cc: Eric Slifka
William Davidson
Tony Hauck (via email at thauck@waveoperating.com)

EXHIBIT A

LETTER AGREEMENT

(see attached)

As of April 3, 2014

Global Partners LP
800 South Street
Suite 200
Waltham, MA 02453

**Re: Basin Transload, LLC (the "*Company*")**

Ladies and Gentlemen:

Reference is made to that certain Irrevocable Limited Guaranty Agreement dated as of the date hereof (the "***Guaranty***") executed by Global Partners LP, a Delaware limited partnership ("***Global***") in favor of Tesoro High Plains Pipeline Company LLC, a Delaware limited liability company ("***THPP***"). Pursuant to the Guaranty, Global unconditionally and absolutely guarantees to THPP the prompt payment when due of all amounts payable by Basin Transload, LLC, a Delaware limited liability company ("***Basin***") to THPP (a) pursuant to that certain Construction and Indemnity Agreement (Beulah Tie-In) dated as of the date hereof (the "***Construction Agreement***") by and between Basin and THPP, (b) pursuant to that certain Connection Agreement dated as of the date hereof (the "***Connection Agreement***") by and between Basin and THPP, (c) pursuant to that certain Easement Agreement dated as of the date hereof (the "***Easement Agreement***" and, together with the Construction Agreement and the Connection Agreement, each a "***THPP Agreement***" and collectively, the "***THPP Agreements***") or (d) any other Obligations (as defined in the Guaranty) due to THPP (collectively, the "***Guaranteed Obligations***"). Capitalized terms not otherwise defined herein shall have the meaning set forth in the THPP Agreements.

Global, through its wholly-owned subsidiary, Global Operating LLC, currently owns 60% of the issued and outstanding membership interests in Basin. TGC, L.P., a Montana limited partnership ("***TGC***"), currently owns 20% of the issued and outstanding membership interests in Basin. MBI Holdings, LLC, a North Dakota limited liability company ("***MBI***" and, together with TGC, the "***20% Owners***"), currently owns 20% of the issued and outstanding membership interests in Basin.

Global, TGC and MBI have agreed that, in the event Global is required to pay any amounts to THPP in respect of the Guaranteed Obligations during the Term or following the Recovery Period (any such amount(s), a "***Guaranty Payment***"), each of TGC and MBI shall, within 5 business days of receiving notice from Global of such required Guaranty Payment to THPP, reimburse Global 20% of the Guaranty Payment. By way of example, if THPP makes demand against Global for a Guaranty Payment in the amount of $5,000,000, then, within 5 business days of receiving notice from Global of such required Guaranty Payment, TGC and MBI shall each pay $1,000,000 to Global (representing each of their respective 20% shares of such Guaranty Payment).

In the event either TGC or MBI fails to timely pay its respective 20% share of any Guaranty Payment made by Global (such non-paying party, a "***Non-Paying Party***"), Global may, at its election, exercise one or more of the following remedies:

(a) Global may elect, by written notice to both TGC and MBI, to treat any Non-Paying Party's respective 20% share of any Guaranty Payment made by Global as a Required Contribution pursuant to Section 5.1(a) of the Limited Liability Company Agreement of Basin (the "***LLC Agreement***"). The Non-Paying Party shall be deemed a Delinquent Member (as defined in Section 5.3 of the LLC Agreement) and Global's wholly owned subsidiary, Global Operating LLC shall be deemed to have advanced the entire amount of such Delinquent Member's Required Contribution. Any 20% Owner who is not a Non-Paying Party shall, in addition to paying its respective 20% share of any Guaranty Payment made by Global, be given the opportunity to reimburse Global its proportionate share of such Delinquent Member's Required Contribution in accordance with the LLC Agreement. The Delinquent Member's Percentage Interests (as defined in the LLC Agreement) shall be adjusted in accordance with Section 5.3 of the LLC Agreement.

(b) Global may elect, by written notice to Basin and to the Non-Paying Party, to require Basin to pay any distributions which would otherwise be payable to the Non-Paying Party to be paid to Global in an amount equal to such Non-Paying Party's respective 20% share of any Guaranty Payment made by Global together with interest thereon equal to 12% per annum. Such amounts may be made from the Distribution Escrow as set forth below.

(c) Global may elect, by written notice to the Non-Paying Party, to acquire the entire Membership Interest (as defined in the LLC Agreement) owned by such Non-Paying Member at a price equal to the Fair Market Value (as defined in the LLC Agreement) of such Membership Interest, and such Non-Paying Party shall be obligated to sell its Membership Interest to Global as provided in Section 6.5 of the LLC Agreement. In calculating the Fair Market Value pursuant to Section 6.5(a) of the LLC Agreement, the Fair Market Value shall be reduced by an amount equal to the Non-Paying Party's 20% share of any Guaranty Payment made by Global.

(d) Global may elect, by written notice to Basin, to setoff any payments due from Global (or any of its wholly-owned subsidiaries) to Basin under any transloading or similar agreement in an amount equal to 250% of the Non-Paying Party's 20% share of any Guaranty Payment made by Global.

(e) Global may at any time take such other action (including instigating court actions) as Global may deem appropriate to obtain payment by the Non-Paying Party's 20% share of any Guaranty Payment made by Global.

Global, TGC and MBI agree that, commencing as of the Phase 1 Commencement Date, Basin shall withhold 50% of the distributions otherwise declared and payable to each of the 20% Owners and hold such distributions in escrow for the benefit of Global (such escrowed amounts, the "***Distribution Escrow***"). In no event shall the respective Distribution Escrow for each of

TGC and MBI exceed $1,300,000, provided that (a) once the total THPP Revenues received by THPP equal 1/3 of the maximum Indemnified Amount, the maximum Distribution Escrow for each of TGC and MBI will be reduced to $650,000 and any excess amounts in the Distribution Escrow shall be distributed to TGC and MBI, as appropriate and (b) once the total THPP Revenues received by THPP equal 2/3 of the maximum Indemnified Amount, there shall be no further Distribution Escrow and any amounts therein shall be distributed to TGC and MBI, as appropriate. Notwithstanding anything herein to the contrary, in the event that there are any sums available in the Distribution Escrow for a Non-Paying Party, Global shall withdraw sums from the Distribution Escrow for a Non-Paying Party pursuant to (b), above, before availing itself of any of the other remedies set forth above.

Global, TGC and MBI have further agreed that, in the event Global fails to make any required Guaranty Payment to THPP under the terms of the Guaranty, and one or both of TGC and MBI collectively pay 100% of such Guaranty Payment (such a payment, a "***Replacement Payment***"), Global shall, within 5 business days of receiving notice from TGC and/or MBI, as applicable, of such Replacement Payment, reimburse TGC and/or MBI, as applicable, 60% of the Replacement Payment made by either TGC or MBI. By way of example, if THPP makes demand against Global for a Guaranty Payment in the amount of $5,000,000 (which Global fails to pay), and each of TGC and MBI pay $2,500,000 to THPP, then, within 5 business days of receiving notice from TGC and MBI of such Replacement Payment, Global shall pay $1,500,000 to each of TGC and MBI (representing Global's 60% share of such Replacement Payment).

In the event Global fails to timely pay its 60% share of any Replacement Payment made by either TGC or MBI (such paying party, a "***Paying Party***" and, if more than one, the "***Paying Parties***"), the Paying Party(ies) may, at their election, exercise one or more of the following remedies:

(f) The Paying Party(ies) may elect, by written notice to Global, to treat Global's 60% share of any Replacement Payment made by the Paying Party(ies) as a Required Contribution pursuant to Section 5.1(a) of the Limited Liability Company Agreement of Basin (the "***LLC Agreement***"). Global shall be deemed a Delinquent Member (as defined in Section 5.3 of the LLC Agreement) and the Paying Party(ies) shall be deemed to have advanced the entire amount of such Delinquent Member's Required Contribution. Global's Percentage Interests (as defined in the LLC Agreement) shall be adjusted in accordance with Section 5.3 of the LLC Agreement.

(g) The Paying Party(ies) may elect, by written notice to Basin and to Global, to require Basin to pay any distributions which would otherwise be payable to Global to be paid to the Paying Party(ies) in an amount equal to Global's 60% share of any Replacement Payment made by the Paying Party(ies) together with interest thereon equal to 12% per annum.

(h) The Paying Party(ies) may at any time take such other action (including instigating court actions) as the Paying Party(ies) may deem appropriate to obtain payment of Global's 60% share of any Replacement Payment made by the Paying Party(ies).

Pursuant to Section 8(b)(iii) of the Construction Agreement, Basin has the right to replace the Guaranty with a Letter of Credit. In the event that the Guaranty is not replaced by a Letter of Credit by the first anniversary of the Phase 1 Commencement Date, Global, TGC and MBI shall mutually agree on additional security to be provided by each of TGC and MBI to Global to secure their respective 20% share of any Guaranteed Obligations.

TGC's and MBI's respective obligations to pay 20% of any Guaranty Payment and Global's obligation to pay 60% of any Replacement Payment are predicated on each of their current Percentage Interests (as defined in the LLC Agreement) in Basin. In the event that, during the term of this letter agreement, (a) TGC's or MBI's Percentage Interests change, their respective obligations hereunder with respect to any Guaranty Payment shall be adjusted accordingly, and (b) Global's Percentage Interest changes, Global's obligations hereunder with respect to any Replacement Payment shall be adjusted accordingly.

The parties acknowledge and agree that the obligations under this letter agreement shall apply only to Phase 1 under the THPP Agreements. The parties agree that all parties must mutually agree to Basin electing to proceed with Phase 2 under the THPP Agreements. In such event, Global, TGC and MBI must mutually agree on each party's respective obligations with respect to any Guaranty Payment relating to Phase 2. In the event that the parties do not mutually agree to proceed with Phase 2 under the THPP Agreements, the respective balances of the TGC and MBI Distribution Escrow amounts shall be distributed to TGC and MBI as soon as the Phase 1 Guaranty Obligations are satisfied.

This letter agreement shall terminate (a) as of the effective date of the termination of the Guaranty, other than with respect to any Guaranty Payment due or payable under the Guaranty or any Replacement Payment made as of the effective date of such termination, and (b) with respect to any 20% Owner, as of the date such 20% Owner ceases to own any of the issued or outstanding membership interests of Basin, other than with respect to such 20% Owner's obligations hereunder arising prior to such date.

If the foregoing correctly states your understanding with respect to the matters stated in this Agreement, please acknowledge by signing in the space provided below.

[*Signature Pages Follow*]

Accepted and agreed to as of the date first written above by:

**GLOBAL PARTNERS LP**

By: ______________________________
Name: Mark Romaine
Title: Chief Operating Officer

**TGC, L.P.**

By: Diamond B Companies, Inc., as general partner

By: ______________________________
Name: James R. Bennett
Title: President

**MBI HOLDINGS, LLC**

By: ______________________________
Name: James Arthaud
Title: President

**BASIN TRANSLOAD, LLC**

By: William G. Davidson
Name: William G. Davidson
Title: President

mb31020.012

Accepted and agreed to as of the date first written above by:

**GLOBAL PARTNERS LP**

By: ______________________
Name: Mark Romaine
Title: Chief Operating Officer

**TGC, L.P.**

By: Diamond B Companies, Inc., as general partner

By: ______________________
Name: James R. Bennett
Title: President

**MBI HOLDINGS, LLC**

By: ______________________
Name: James Arthaud
Title: President

**BASIN TRANSLOAD, LLC**

By: ______________________
Name: William G. Davidson
Title: President

EXHIBIT B

IRREVOCABLE LIMITED GUARANTY AGREEEMENT

(see attached)

**ADDENDUM "B"**

**To Construction and Indemnity Agreement**
**[Beulah Tie-In]**
**Between Tesoro High Plains Pipeline Company LLC,**
**and Basin Transload, LLC**

**Form of Guaranty**

**IRREVOCABLE LIMITED GUARANTY AGREEMENT**

This Limited Guaranty Agreement (the "Guaranty") is made by Global Partners LP, a Delaware limited partnership (the "Guarantor"), in favor of Tesoro High Plains Pipeline Company LLC, a Delaware limited liability company ("Creditor").

WHEREAS, Guarantor's indirect partially-owned subsidiary, Basin Transload, LLC ("Company"), and Creditor are parties to that certain Construction and Indemnity Agreement (the "Agreement", including all subsequent amendments thereto), pertaining to the construction, by Creditor, of certain facilities that, for the period specified in the Agreement, will enable the delivery of crude oil from Creditor's interstate Pipeline System (as defined in the Agreement) into the Beulah Rail Facility (as defined in the Agreement);

WHEREAS, as an inducement to Creditor to enter into the Agreement and perform its obligations thereunder, and as security for Company's obligation under Section 7 of the Agreement to indemnify THPP for the Actual Costs of the THPP Facilities and an Agreed Return (as such terms are defined in the Agreement), Guarantor has agreed to provide assurance for the payment of Company's obligations under the Agreement, subject to certain limitations provided in this Guaranty; and

WHEREAS, a partial limit on the liability of Guarantor under this Guaranty is TWENTY FIVE MILLION U.S. Dollars ($25,000,000) (the "Guaranty Cap").

For value received and in consideration of the foregoing, receipt and sufficiency of which are hereby acknowledged, Guarantor agrees as follows:

1. Guaranty. Subject to the terms herein (including applicable limits hereinafter described), Guarantor unconditionally and absolutely guarantees to the Creditor the prompt payment when due of all amounts payable by Company under the Agreement, including but not limited to (a) all expenses, including reasonable attorneys' fees and court costs, incurred by Creditor to enforce its rights against Company under the Agreement, (b) contractual obligations by Company to indemnify Creditor under the terms of the Agreement(s) ("Indemnity Obligations"), and (c) consequential, punitive and special damages to the extent not disallowed to Creditor under the Agreement(s) or applicable law, (all of the foregoing, collectively, the "Obligations"). Guarantor's obligations and liability under this Guaranty shall be limited to payment obligations only. This is a guarantee of payment and performance and not of collection. If Company fails to pay any Obligations, Guarantor will pay such Obligations (subject to certain applicable limits hereinafter described) directly to Creditor upon the Creditor's demand in accordance with the provisions of this Guaranty. Guarantor is not guaranteeing any obligations of Basin pursuant to this Guaranty.

2. Extent of Liability. The Obligations for which Guarantor shall be liable to Creditor under this Guaranty (all of the following collectively, the "Guaranteed Obligations") shall include: (a) all Obligations of the Company that arise under or relate to Agreement, and (b) the following with respect to any of the foregoing Obligations, whether incurred before or after the Termination Date: (i) all expenses, including court costs and reasonable attorneys' fees, incurred by Creditor to enforce its rights against the Company under the Agreement or this Guaranty and (ii) interest to the extent provided in the Agreement(s) with respect to the Obligations; provided, however, that the Guaranteed Obligations will exclude amounts of Obligations that exceed, at any time, the sum of: (A) the Guaranty Cap, and (B) the Obligations described in clauses (b)(i) and b(ii) above, and (C) the amount of Indemnity Obligations payable under the Agreement(s), it being agreed that the amount of the potential Indemnity Obligations were not considered in determining the Guaranty Cap.

3. Term. This is a continuing, irrevocable Guaranty that will remain in full force and effect until the expiration or termination of the Agreement (the "Termination Date"); provided that this Guaranty shall remain in full force and effect thereafter until all Guaranteed Obligations have been indefeasibly satisfied. All payments received by Creditor from Company, from any collateral securing any of the Obligations or from any source, may be applied, at Creditor's election, first to Obligations that are not Guaranteed Obligations and then to Guaranteed Obligations; provided, that after the Termination Date, all payments received by Creditor directly from Guarantor will, upon receipt of contemporaneous written designation from Guarantor to such effect, be applied first to Guaranteed Obligations and then to Obligations that are not Guaranteed Obligations, but absent such a contemporaneous written designation, shall be applied at the discretion of Creditor.

4. Nature of Guaranty. With respect to the Guaranteed Obligations, Guarantor shall be primarily liable, jointly and severally with Company. Guarantor's responsibilities with respect to any Guaranteed Obligations are continuing and will not be affected by the existence, validity, enforceability, perfection, or extent of any collateral for such Guaranteed Obligations or any other Obligations, or by any defects in the perfection or condition of such collateral, or by the release of such collateral. If any payment to Creditor for any of the Obligations is rescinded or must otherwise be returned as a bankruptcy preference or for any reason, Guarantor will remain liable hereunder for any such Obligations (to the extent they are Guaranteed Obligations) as if such payment had not been made, and any prior release or discharge from the terms of this Guaranty given to Guarantor by Creditor shall be without effect.

5. Consents, Waivers and Renewals. Guarantor agrees that Company and Creditor may mutually modify the Agreement without the consent of Guarantor and without notice to Guarantor, and Guarantor acknowledges and agrees that such modifications thereof will be binding on Guarantor and will not be a defense to Guarantor's liability under this Guaranty, even if such modifications increase the Guaranteed Obligations. Creditor may resort to Guarantor for payment of any of the Guaranteed Obligations whether or not Creditor has previously resorted to any collateral security or proceeded against Company or any other obligor principally or secondarily obligated for any of the Obligations. Guarantor hereby waives notice of acceptance of this Guaranty, and also presentment, protest and notice of protest, dishonor or default of any evidences of indebtedness guaranteed hereunder. Whether or not Company has existing Agreement(s) with Creditor, Guarantor acknowledges and agrees that this Guaranty does not obligate Creditor to enter into, extend or to renew all or any of the Agreement(s) with the Company or with Guarantor.

6. Demands and Notice. If Creditor elects to exercise its rights under this Guaranty, Creditor shall make a written demand on Guarantor (a "Payment Demand"). A Payment Demand shall identify that the demand is being made under the Agreement(s), identify the amount of the demand, and contain a statement that Creditor is calling upon Guarantor under this Guaranty for payment of Guaranteed Obligations. A Payment Demand conforming to the foregoing requirements will be sufficient notice to Guarantor to pay under this Guaranty within three (3) business days. Notices under this Guaranty will be deemed received if sent to the address specified below: (a) on the day received if sent by overnight express delivery, (b) on the next business day if served by fax when sender has machine confirmation that the fax was transmitted to the correct fax number listed below, or (c) on the next business day after deposit (whether or not actually received) if sent by certified, first-class mail, postage prepaid, return-receipt requested; provided, however, that a notice of termination under Section 3 will not be deemed given or received until the date that it is actually received by Creditor. Any party may change its address to which notice is to be given hereunder by providing notice of same in accordance with this section.

To Creditor:

Tesoro High Plains Pipeline Company LLC
19100 Ridgewood Parkway
San Antonio, Texas 78259
Attn: Credit Department – Kevin Chandler
Fax: (210) 626-6048

To Guarantor:

Global Partners LP
800 South Street, Suite 200
Waltham, MA 02453
Attn: Chief Operating Officer
Fax: 781-398-9000

7. Representations and Warranties. Guarantor hereby represents and warrants that (a) it is duly organized, validly existing and in good standing under the laws of the jurisdiction of its formation, (b) the execution, delivery and performance by Guarantor of this Guaranty have been duly authorized by all necessary action and do not violate Guarantor's charter, by-laws or other governing formation documents, (c) this Guaranty constitutes the legal, valid and binding obligation of Guarantor, enforceable against it in accordance with its terms (except as enforceability may be limited by bankruptcy, insolvency, and other similar laws affecting enforcement of creditors' rights in general and general principles of equity), (d) as of the date hereof, and after giving effect to this Guaranty and the obligation evidenced hereby, Guarantor is, and will be, solvent, and has and will have assets which, fairly valued, exceed its obligations, liabilities (including contingent liabilities) and debts, and has and will have property and assets sufficient to satisfy and repay its obligations and liabilities, (e) Guarantor is the parent company of Company and as such will derive direct and indirect economic benefits from the accommodations provided to Company pursuant to the Agreement(s), and (f) Guarantor's correct Federal Employer Identification Number (the "FEIN") is inserted in the blank below Guarantor's signature at the end of this Guaranty. No Creditor has made any representation, warranty or statement to Guarantor in order to induce the Guarantor to execute this Guaranty.

8. Governing Law; Submission to Jurisdiction; Venue. This Guaranty shall be governed by and construed in accordance with the laws of the State of Texas and applicable federal law. Guarantor, for itself and its successors and assigns, hereby irrevocably (a) submits to the non-exclusive jurisdiction of the state and federal courts in the State of Texas for the purposes of all legal actions or proceedings arising out of or relating to this Guaranty or the transactions

contemplated hereby, (b) waives, to the fullest extent permitted by applicable law, any objection that it may now or in the future have as to the venue of any action, proceeding or litigation arising out of or in connection with this Guaranty brought in the District Court of Bexar County, Texas, or in the United States District Court for the Western District of Texas, San Antonio Division, whether the objection is based on forum non conveniens or otherwise, and (c) agrees that any legal action or proceeding against Guarantor arising out of or in connection with this Guaranty may be brought in any of the foregoing courts. Guarantor hereby agrees that service of process upon Guarantor may be made by certified or registered mail, return receipt requested, at its address specified herein. Nothing herein shall affect the right of Creditor to serve process in any other manner permitted by applicable law or shall limit the right of Creditor to bring any action or proceeding against Guarantor or with respect to any of Guarantor's property in courts in other jurisdictions. Any action or proceeding by Guarantor against Creditor shall be brought only in a court located in San Antonio, Bexar County, Texas.

9. Miscellaneous. This Guaranty contains the entire agreement of the parties with respect to the subject matter hereof and may not be amended except by a written instrument executed by Guarantor and Creditor. The parties agree that there are no oral agreements, representations, or warranties with respect to the subject matter of this Guaranty that are not expressly set forth in this Guaranty. This Guaranty shall bind the successors and assigns of Guarantor and Creditor. Prompt notice shall be furnished to the other party of any such assignment or succession. This Guaranty shall not be deemed to benefit any person except Creditor and its respective successors and assigns.

10. Guarantor Reporting. Within ninety (90) days after the end of each fiscal year of Guarantor, Guarantor shall deliver to Creditor true and correct copies of Guarantor's audited financial statements for that fiscal year certified as true and correct by Guarantor's chief financial officer, which financial statements will include (a) a balance sheet, (b) income statements and reconciliation of cash flow, and (c) statements of contingent liabilities (including all schedules) and will be prepared in accordance with sound accounting principles consistently applied, and will fairly represent the financial condition of the Guarantor as of the respective dates thereof. If Guarantor's audited financial statements are not available or have not been provided to Creditor, then Guarantor shall timely deliver to Creditor such unaudited financial statements certified by such officer, and Guarantor shall also deliver to Creditor copies of Guarantor's federal income tax return filed with the Internal Revenue Service, including all schedules, K-1's and attachments thereto, within thirty (30) days of filing thereof, and if requested by Creditor, copies of any extensions of the filing date(s). In addition, within twenty (20) days after written request from Creditor, Guarantor will furnish to Creditor true and correct copies of such financial statements and other information relating to the financial condition, properties and affairs of Guarantor as Creditor reasonably requests from time to time.

11. Waiver of Subrogation; Subordination of Guarantor Claims. Notwithstanding anything to the contrary contained in this Guaranty, Guarantor hereby unconditionally and irrevocably waives, releases and abrogates any and all rights it may now or hereafter have under any agreement, at law or in equity (including, without limitation, any law subrogating the Guarantor to the rights of Creditor), to assert any claim against or seek contribution, indemnification or any other form of reimbursement from the Company for any payment made by Guarantor to Creditor under or in connection with this Guaranty. Upon the occurrence of any breach of any of the Agreement(s) by Company while any Guaranteed Obligations remain unpaid and upon written notice thereof to Guarantor, Guarantor shall not receive or collect, directly or indirectly, from Company any Guarantor Claims (as hereinafter defined) until ninety-one (91) days after all Obligations have been paid in full. As used herein, the term "Guarantor Claims" shall mean all

debts and liabilities of Company to Guarantor, whether such debts and liabilities now exist or are hereafter incurred or arise, or whether the obligations of Company thereon are direct, contingent, primary, secondary, several, joint and several, or otherwise, and irrespective of whether such debts or liabilities are evidenced by note, contract, open account, or otherwise, and including without limitation all rights and claims of Guarantor against Company arising as a result of subrogation as a result of Guarantor's payment of all or a portion of the Guaranteed Obligations. In the event that, notwithstanding anything to the contrary in this Guaranty, Guarantor should receive any such funds, payment, claim or distribution that is prohibited by this Guaranty, Guarantor agrees to hold in trust for Creditor an amount equal to the amount of all funds, payments, claims or distributions so received, and agrees that it shall have absolutely no dominion over the amount of such funds, payments, claims or distributions so received except to pay them promptly to Creditor to apply to the Obligations, and Guarantor covenants promptly to pay the same to Creditor.

12. Waiver of Other Rights; Suretyship Laws. This Guaranty shall be effective as an unconditional waiver of, and Guarantor hereby expressly waives unconditionally, any and all rights, defenses, offsets or remedies to which Guarantor may otherwise have been entitled from time to time, including, without limitation, (a) any and all rights, defenses, offsets or remedies arising from the bankruptcy, insolvency, incapacity, dissolution or liquidation of Company, and (b) any rights under Rule 31 of the Texas Rules of Civil Procedure, or Section 17.001 or Chapter 43 of the Texas Civil Practice and Remedies Code, as such rules and statutes may be amended from time to time, or any other surety laws in effect from time to time, except that Guarantor does not waive a contractual defense of Company under the Agreement(s) that would have been available to Guarantor if it were in the contractual position of Company under the Agreement(s), if, and to the limited extent that, Company's defense is based solely upon the non-performance and default of the Creditor under the applicable Agreement(s).

13. Guaranteed Obligations Not Reduced. Guarantor agrees that Guarantor's liability under this Guaranty shall not be discharged, released, reduced or adversely affected by any of the following, it being agreed that Guarantor shall remain liable for Guaranteed Obligations regardless of whether Company or any other person is found not liable on the Guaranteed Obligations or any part thereof for any reason: (a) the reorganization, merger or consolidation of Company into or with any other corporation or entity, (b) the sale, lease or transfer of any or all of the assets of Company or Guarantor, (c) any change in the shareholders, partners, owners or members of Company or Guarantor, (d) any release or amendment or waiver of, or consent to departure from, any other guaranty or support document, or (e) the unenforceability of any part of the Guaranteed Obligations for any of the following reasons: the officers or representatives executing this Guaranty acted without authority, the act of creating the Guaranteed Obligations or any part thereof was ultra vires, the Guaranteed Obligations violate applicable usury laws, or one or more of the Agreement(s) was signed by an officer acting outside the scope of his authority or was otherwise irregular, not genuine or authentic, or was forged.

14. Severability. If any provision of this Guaranty is held to be illegal, invalid, or unenforceable under present or future applicable laws effective during the term of this Guaranty, such provision shall be fully severable and this Guaranty shall be construed and enforced as if such illegal, invalid, or unenforceable provision had never comprised a part of this Guaranty, and the remaining provisions of this Guaranty shall remain in full force and effect and shall not be affected by such illegal, invalid, or unenforceable provision or by its severance, unless such continued effectiveness of this Guaranty, as modified, would be contrary to the basic understandings and intentions of the parties as expressed herein.

15. Waiver of Right to Trial by Jury. **GUARANTOR IRREVOCABLY AND VOLUNTARILY WAIVES ANY RIGHT THAT IT MAY HAVE TO A TRIAL BY JURY IN RESPECT OF ANY ACTION OR PROCEEDING RELATING TO THIS GUARANTY.**

16. Rules of Construction. The rule of construction that ambiguities in a document will be construed against the party who drafted it will not be applied in interpreting this Guaranty.

(signature page follows)

**SIGNATURE PAGE TO LIMITED GUARANTY AGREEMENT**

This Guaranty is executed by Guarantor's duly authorized representative to be effective as of April 3, 2014.

GLOBAL PARTNERS LP,
a Delaware limited partnership

By:____________________
Name: ~~Mark Romaine~~ Edward J. Faneuil
Title: ~~Chief Operating Officer~~ Executive Vice President

FEIN: 74-3140887